JONES *v.* MASON & DULION COMPANY, INC., et al.

No. 40339        January 7, 1957        91 So. 2d 715

*Taylor & Dawson,* Greenville, for appellant.

*Farish, Keady & Campbell,* Greenville, for appellees.

Kᴋ, J.

The appellant, Charlie Jones, filed a claim under the Mississippi Workmen's Compensation Act, as amended, against Mason & Dulion Company, Incorporated, and its insurance carrier, for additional compensation for disability resulting from injuries sustained when he fell from a step ladder while working for Mason & Dulion, Incorporated, on June 13, 1955. After a hearing the attorney-referee entered an order denying the claim. The full commission and the circuit court affirmed the order of the attorney-referee; and the appellant has prosecuted this appeal.

The record shows that the injury complained of was a straddle injury to the appellant's groin. The appellant was examined immediately after his injury by Dr. Jerome Hirsch at the Greenville Hospital. The doctor found no evidence at that time of any laceration or

bruise, but the appellant complained of pain in his left testicle, running up into his left side. The testicle was small, and there was evidence of tenderness, but no swelling. The doctor gave the appellant codeine aspirin to relieve the pain, and told the appellant to go home and take the medicine and remain in bed. The doctor saw the appellant again a few days later. He was still complaining of pain, and the doctor gave him an injection of novocain, which relieved the pain for a short time. But the pain returned and the doctor then referred the patient to Dr. Charles H. Harrison, a specialist in urology.

Dr. Harrison examined the appellant on July 6, and found that he had a left inguinal scar, and the spermatic cord was slightly enlarged from the ring downward. The left testicle was approximately one-third the size of the right testicle. There was no evidence of any scrotal lacerations or abrasions. The doctor diagnosed the case as one of neuralgic pain arising out of an atrophic testicle. There was evidence of an old hernia operation scar and a thickened spermatic cord; and the doctor was of the opinion that the atrophy of the testicle and the thickening of the left spermatic cord had developed gradually over a considerable period of time.

After a treatment of novocain had given only temporary relief, the doctor performed a surgical operation on September 7 for the removal of the left testicle. The doctor testified that a pathological examination of the tissue removed confirmed his opinion that the atrophy of the testicle dated back prior to June 13. The appellant was kept in the hospital from September 6 until September 10, when he was permitted to return to his home. A few days later, however, the doctor found that there was an infection which required further treatment; and the appellant was readmitted to the hospital on September 16, and was discharged on September 21. The doctor testified that he saw the appellant twice thereafter and

that he complained of no pain. The doctor discharged the appellant on September 28 as cured, and reported to the commission that he was able to return to work.

Dr. Noble R. Frisby, who testified as a witness for the appellant, stated that he saw the appellant on August 3, 1955, and that the appellant was complaining at that time of soreness, pain and swelling of the left testicle; that he treated the appellant during the month of August and the early part of the month of September; and that he did not see the appellant again until December. He stated that he treated the appellant several times during the month of December, and there was still tenderness and pain, and upon the basis of his physical examination of the appellant at that time he was of the opinion that the appellant was not able to carry on his regular duties without pain and discomfort. He stated that the appellant seemed to be mentally depressed for some reason; there was no hindrance of movement as a result of the surgery; but the pain would probably hinder the appellant's movements as a common laborer. On cross-examination Dr. Frisby stated that he had noticed the evidence of an old hernia operation that had been performed prior to the appellant's injury on June 13; but he thought the pain which the appellant continued to complain of at the time of the hearing was caused by the injury. He was asked whether the appellant was "suffering pain or whether it is something in his mind." His answer was, "That's a hard question. I think probably both have a part there." He was asked whether the operation resulted in a limitation of the appellant's ability to carry on the normal male function. His answer was that it did.

The appellant, Charlie Jones, testified that he was 55 years of age and was engaged in construction work as a common laborer at the time he was injured. He was asked how the operation affected him. His answer was, "Its just got to the place where I can't do anything. I

can't walk, can't stand up long * * * I am just hurting. From the time I first get up in the morning I can't think anything. * * * I am getting worser every day, no better.'' He stated that he had worked two or three weeks at the Texaco Gas Station during the months of November and December, but had got to the place where he could not do what they had for him to do. He stated that he had not been able to engage in sexual inter-course with his wife since the operation. He was asked what effect the operation had had upon his mind. His answer was, ''I can't think of anything hardly no longer than you tell me. I get up in the morning and have to study myself. * * * I can't think of anything long. I forget it before I hear it.'' He was asked on cross-examination whether he said that he was worried about the matter. His answer was, ''I didn't say I be worried. I would just be nervous * * * I get nervouser and ner-vouser every day.''

Dr. Harrison, who testified as a witness for the em-ployer and its insurance carrier, testified that the loss of one testicle from any cause will not impair sexual abilities. He stated that he did not think that the opera-tion performed on the appellant would have any effect upon the appellant's nervous condition, and that it would have no effect upon the functioning of his body, the muscular function. He did not see how it would af-fect his mind. He could see no cause for him not being able to work. The injury could have aggravated the con-dition of the atrophied testicle. That was the reason for the surgery. But the injury did not cause the atrophy.

The attorney-referee found that as a result of the injury complained of it was necessary that the claimant's left testicle be removed by surgery on September 7, 1955; and that claimant was discharged as cured on Septem-ber 28, 1955; that the employer and its insurance carrier had voluntarily paid compensation to the claimant in the amount of $25 per week for temporary total disability

for a period of sixteen weeks following the injury, and also medical and hospital expenses in the amount of approximately $300; that the claimant had sustained no permanent disability as a result of the accident; and that his claim for additional compensation and medical expenses should be disallowed.

The appellant's attorneys argue two points as grounds for reversal of the judgment of the lower court: (1) That the appellant should have been allowed compensation for permanent partial disability for the loss of the testicle under Section 8(c) (21) of the Workmen's Compensation Act (Section 6998-09, Code of 1942, as amended); and (2) that the finding of the attorney-referee and the Commission that the appellant had sustained no permanent disability as a result of the accident was contrary to a clear preponderance of the evidence.

■■■ No question is raised on this appeal with respect to the payment to the appellant of total temporary disability benefits for the sixteen week's period following the injury. The claim involved in this appeal is a claim for compensation for permanent partial disability as a result of the injury whereby the appellant lost the left testicle.

The appellant's attorneys admit that the loss for which compensation is claimed is not the loss of a scheduled member for which compensation is specifically provided in subsection (c) of Section 8 of the Act; but it is argued that the injury is, nevertheless, compensable under subsection (c) (21) of said Section 8, which provides as follows:

"(21) Other cases: In all other cases in this class of disability, the compensation shall be sixty-six and two-thirds per centum (66/23%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this act, and his wage-earning capacity thereafter in the same employment or otherwise, payable during the

continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the commission on its own motion or upon application of any party in interest, and such payments shall in no case be made for a longer period than four hundred fifty (450) weeks.''

The statute, however, provides no compensation award for nondisabling injury to sexual organs, or disfigurement, except perhaps in cases where such disfigurement interferes with obtaining and retaining employment.

''Disability'', as defined in paragraph (9) of Section 2 of the Workmen's Compensation Act (Session 6998-02, Code of 1942, as amended), means ''incapacity because of injury to earn the same wages which the employee was receiving at the time of injury in the same or other employment.''

The appellant might have been entitled to compensation for some degree of permanent partial disability, if the Commission had found that he continued to suffer disabling pain as a result of his injury. But neither the attorney-referee nor the Commission made such finding. Both the attorney-referee and the Commission, on the other hand, found that the appellant had sustained no permanent disability as a result of the accident; and in view of that finding, we think there was no error in the action of the Commission in denying the appellant's claim for permanent partial disability under Section 8 (c) (21) of the Workmen's Compensation Act.

As a partial explanation of the failure of the Workmen's Compensation Act to provide for the payment of compensation benefits for nondisabling injuries to sexual organs, disfigurement without disabling pain, loss of consortium and so on, Larson, in Section 65.30 of his Workmen's Compensation Law, says:

''It may be argued that refusal to recognize these items as compensable is unfair to the claimant, but this argument forgets that we are here dealing with

the non-fault liability of an employer to an employee who may well have brought on the injury by his own personal negligence. Such liability can be justified as a social measure to prevent hardship due to wage loss, present and prospective, but there is no basis in the philosophy or purpose of workmen's compensation for making non-fault awards which bear no relation to earning capacity merely because the claimant has suffered some other kind of loss which arouses one's sympathy.''

██ ██ After a careful study of the entire record, we are also of the opinion that it cannot be said that the finding of the attorney-referee and the Commission was manifestly wrong or against the weight of the evidence.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.